ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| SUCESIÓN DE FRANK KOLODZIEJ REPRESENTADA POR ELIZABETH EUNICE KOLODZIEJ ZAYAS YELAINE FRANCES KOLODZIEJ SILVA <br><br> Peticionarios <br><br> v. <br><br> JUAN CARLOS KOLODZIEJ MEJIAS P/C DE SU TUTORA <br><br> Recurrida | **TA2026CE00329** | *CERTIORARI* procedente del Tribunal de Primera Instancia Sala Superior de San Juan <br><br> Civil Núm.: SJ2024RF00384 <br><br> Sobre: Autorización Judicial |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

Bonilla Ortiz, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico a 23 de abril de 2026.

Comparece ante nos la Sra. Elizabeth E. Kolodziej Zayas (señora Kolodziej Zayas) y nos solicita que revisemos una *Orden* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, notificada el 9 de febrero de 2026. Mediante el referido dictamen, el foro primario autorizó el desembolso de $27,726.01 de la cuenta de la Sucesión de Frank Kolodziej a favor del ejecutor universal, el Lcdo. Reynaldo Quiñones Márquez (señor Quiñones).

Por los fundamentos que expondremos a continuación, **DENEGAMOS** expedir el auto de *certiorari*.

## I.

El 14 de marzo de 2024, la señora Kolodziej Zayas y la Sra. Elaine F. Kolodziej Silva (señora Kolodziej Silva) presentaron una *Petición* en representación de la

Sucesión de Frank Kolodziej Castro.[1] En esta, esbozaron que su padre a pesar de haber otorgado un testamento abierto, en el que nombró a varios albaceas, estos renunciaron a dicha designación, por lo que, el caudal hereditario se había quedado desprovisto de administración. Así las cosas, solicitaron el nombramiento de un ejecutor universal que diese comienzo a todas las gestiones pertinentes a la administración del caudal, tales como: el inventario de bienes y deudas, radicación de planillas del caudal relicto, la satisfacción de las cargas que gravan varios de los inmuebles del caudal; en fin, todo lo necesario para la elaboración del cuaderno particional para proceder con la distribución de la herencia. En vista a ello, señalaron que habían seleccionado al Sr. Arturo Avilés Hernández Contador Público Autorizado (señor Avilés) como ejecutor universal.

A su vez, plantearon que intentaron infructuosamente de negociar extrajudicialmente con el hermano disidente, el Sr. Juan C. Kolodziej Mejías (señor Kolodziej Mejías o "el recurrido"), quien comparecía al pleito representado por su tutora legal y madre, la Sra. Sonia Mejías Javariz. Por último, solicitaron que fuera nombrado al señor Avilés como ejecutor universal, y le concediera las facultades que le confiere la ley y toda otra facultad concedida al albacea en el testamento otorgado por el causante.

Luego de varias incidencias procesales, el 8 de abril de 2024, el señor Kolodziej Mejías presentó su *Contestación a Petición*.[2] En esencia, solicitó se

---

[1] *Petición*, entrada núm. 1 en el Sistema Unificado de Manejo y Administración de Casos (CASOS).
[2] *Contestación a Petición*, entrada núm. 11 en SUMAC.

sometieran alternativas de peritos ejecutores para que el Tribunal nombrara al mejor capacitado e imparcial.

Posteriormente, el 18 de junio de 2024, el señor Kolodziej Mejías presentó *Moción en Cumplimiento de Orden*.[3] Mediante la cual, recomendó como Comisionado Especial y/o Contador Partidor al Lcdo. Reynaldo Quiñones Márquez (Lcdo. Quiñones).

Ante la discrepancia entre las partes, el 2 de agosto de 2024, el foro primario celebró una vista.[4] En esta, desfilaron los testimonios de ambos ejecutores propuestos, con el fin de facilitarle al foro primario la evaluación de su capacidad y experiencia, e hiciera el correspondiente nombramiento judicial.

Así las cosas, el 26 de agosto de 2024, el foro recurrido notificó una *Sentencia* en la cual declaró *Ha Lugar* la petición para que se designara al Lcdo. Quiñones como ejecutor universal de la Sucesión del Dr. Kolodziej Castro. Para fundamentar el nombramiento, el foro primario expresó que la designación había sido hecha luego de haber "evaluado la experiencia de ambos candidatos en consideración a la magnitud y complejidad del caudal, así como el potencial de que se desarrollen controversias entre los herederos, lo que requeriría una mayor y más delicada intervención del ejecutor universal."

A su vez, el foro de instancia incluyó una nota al calce donde expresó que las peticionarias habían traído a su atención una preocupación sobre su capacidad de satisfacer los honorarios del Lcdo. Quiñones pues estos eran mayores a los honorarios del candidato que habían

---

[3] *Moción en Cumplimiento de Orden*, entrada núm. 26 en SUMAC.
[4] *Minuta*, entrada núm. 45 en SUMAC.

propuesto, entiéndase, el señor Avilés. Ante esto, el foro *a quo* respondió que "[s]i bien el Tribunal puede entender que el aspecto económico es una consideración importante, deben tener en mente que hay diversas formas de satisfacer los honorarios del ejecutor universal, habida cuenta de que existen bienes muebles e inmuebles en el caudal y la retribución del ejecutor es una carga hereditaria."

En desacuerdo, el 9 de septiembre de 2024, las peticionarias presentaron una moción de reconsideración.[5] Sin embargo, el 13 de septiembre de 2024, el foro primario mediante *Orden* la declaró *No Ha Lugar*.[6]

Aun inconformes, el 11 de octubre de 2024, las peticionarias presentaron un recurso de apelación ante este Foro. No obstante, mediante *Sentencia* emitida 15 de enero de 2025, un panel hermano confirmó la determinación apelada.[7]

Posteriormente, el 22 de noviembre de 2025, el señor Quiñones, quien es el Ejecutor Universal nombrado por el Tribunal en el caso presentó una *Moción del Ejecutor Universal Sometiendo Su Primera Factura*.[8] En esta, informó que estaba preparando un Informe detallado, el cual incluía las gestiones realizadas para completar el inventario y avalúo de los bienes del caudal, los problemas que había confrontado, el resultado de sus gestiones, el status de los bienes y bajas del caudal, el movimiento de los fondos bajo su

---

[5] *Moción Solicitando Determinaciones de Hecho Conclusiones de Derecho y Reconsideración*, entrada núm. 47 en SUMAC.
[6] *Orden*, entrada núm. 49 en SUMAC.
[7] *Sentencia*, entrada núm. 61 en SUMAC.
[8] *Moción del Ejecutor Universal Sometiendo Su Primera Factura*, entrada núm. 111 en SUMAC.

control, y otros asuntos relacionados con la Sucesión. Por ello, reclamó la cantidad de $28,838.51 sobre los servicios rendidos desde el 17 de junio de 2024 hasta el 31 de julio de 2025 a ser deducidos de la cuenta bancaria de la Sucesión.

En desacuerdo, el 25 de noviembre de 2025, las peticionarias presentaron su *Oposición a Moción del Ejecutor Solicitando Pago*.[9] Alegaron que, la factura incluyó periodos anteriores a su nombramiento oficial, trámites de su propia renuncia y gestiones realizadas antes de prestar la fianza obligatoria. A su vez, esbozaron que el señor Quiñones incurrió el gastos excesivos e irrazonables. Finalmente, que los honorarios no debían pagarse hasta que se determinara el producto neto de la herencia y no podía exceder el 10% de este. Por ello, solicitaron que el Ejecutor devolviera al caudal el pago de su fianza personal y se ordenara la transparencia total de las cuentas bancarias y contratos de la sucesión.

El 30 de enero de 2026, el señor Quiñones presentó una *Moción del Ejecutor Universal en Cumplimiento de Orden con relación a Objeciones de los Coherederos Representados por la Lcda. Ana Lopez Prieto a la Primera Factura del Ejecutor Universal*.[10] En esencia, sostuvo que sus honorarios de $175 por hora correspondían exclusivamente a servicios profesionales directos y no a tareas administrativas. A su vez, alegó que el pago de la fianza con fondos del caudal se consideran gastos

---

[9] *Oposición a Moción del Ejecutor Solicitando Pago*, entrada núm. 126 en SUMAC.

[10] *Moción del Ejecutor Universal en Cumplimiento de Orden en Relación a Objeciones de los Coherederos Representados por la Lcda. Ana Lopez Prieto a la Primera Factura del Ejecutor Universal*, entrada núm. 137 en SUMAC.

legítimos de administración. En cuanto a los retrasos contributivos, esboza que se deben a la acción negligente de la señora Zayas Ortiz, viuda del causante, al no pagar deudas a pesar de tener fondos disponibles. Asimismo, planteó que el caudal posee activos estimados en $8,563,936.00, lo que garantiza solvencia suficiente para cubrir los gatos de liquidación y deudas gubernamentales antes de proceder con la partición a los herederos.

Evaluadas las mociones, el 9 de febrero de 2026, el foro primario notificó una *Orden*, mediante la cual determinó lo siguiente:[11]

> Tras examinar las mociones del ejecutor universal y de las partes que han comparecido, así como la factura y los informes trimestrales y la totalidad de los documentos y anejos presentados en el caso, determinamos ajustar la factura para descontar las 3.5 horas correspondientes a las gestiones realizadas previo a que adviniera final y firme el nombramiento del ejecutor universal mediante el mandato notificado el 13 de marzo de 2025. De igual forma, se descontaron los $500 correspondientes al pago de la fianza. Tras reevaluar el asunto, determinamos que la obligación de pagar la fianza debe recaer sobre el ejecutor, no sobre la sucesión, toda vez que el propósito de la fianza es responder por sus actuaciones. Así ajustada, se aprueba el pago de $27,726.01.
>
> Se autoriza emitir un cheque por dicha cantidad de la cuenta de la Sucesión a nombre del Lcdo. Reynaldo Quiñonez Márquez.

En desacuerdo, el 17 de febrero de 2026, la señora Kolodziej Zayas presentó una *Moción De Reconsideración y Solicitando Determinaciones de Hecho y Conclusiones de Derecho Iniciales*.[12] No obstante, el 18 de febrero de 2026, el foro *a quo* notificó una *Resolución* en la cual denegó la reconsideración.[13]

---

[11] *Orden*, entrada núm. 140 en SUMAC
[12] *Moción De Reconsideración y Solicitando Determinaciones de Hecho y Conclusiones de Derecho Iniciales*, entrada núm. 144 en SUMAC.
[13] *Resolución*, entrada núm. 144 en SUMAC.

Aun inconforme, el 17 de marzo de 2026, la señora Kolodziej Zayas presentó el recurso de epígrafe y levantó los siguientes señalamientos de error:

> Erró el Tribunal de Primera Instancia abusó de su discreción al autorizar actuaciones administrativas sobre el caudal hereditario sin que constaran en el expediente las determinaciones esenciales para su administración y sin asegurar las salvaguardas judiciales necesarias para proteger los derechos patrimoniales de un heredero incapaz, lo que vicia de nulidad las actuaciones autorizadas, al autorizar y ordenar el pago de honorarios al ejecutor con cargo al caudal hereditario, sin observar las exigencias del Código Civil de Puerto Rico de 2020 relativas a la fianza previa, la determinación del producto neto de la herencia y la prelación de deudas y obligaciones del caudal, particularmente las contributivas.

> Erró el Tribunal de Primera Instancia al omitir la debida protección del heredero incapaz, pese a que el Tribunal conocía desde el inicio su condición de incapaz judicialmente declarado y, además, había recibido el relevo de la Procuradora de Asuntos de Familia, quien expresamente indicó que no podía actuar como defensora judicial. El foro primario permitió la disminución del caudal heredado mediante el pago al ejecutor universal sin nombrar defensor judicial ni adoptar medidas cautelares mínimas.

> Erró el Tribunal de Primera Instancia al denegar sin fundamentos la moción de reconsideración y nulidad de actuaciones, consolidando así una situación contraria a la política pública de protección reforzada de las personas incapaces y al debido proceso de ley, en un contexto donde los desembolsos ya autorizados pueden causar un perjuicio irreparable a la cuota del incapaz.

El 18 de marzo de 2026, emitimos una *Resolución* en la que concedimos a la parte recurrida el término de quince días, contados desde la presentación del recurso, para que presentaran su posición.

Luego de una solicitud de prórroga, el 13 de abril de 2026, el señor Quiñones presentó su *Réplica del Ejecutor Universal a la Solicitud de Certiorari Radicada*

*por la Parte Peticionaria con fecha del 16 de marzo de 2026.*

El 15 de abril de 2026, el señor Kolodziej Mejías presentó su *Alegato de la Parte Recurrida*.

Contando con la comparecencia de las partes, procedemos a atender el recurso.

**II.**

**-A-**

El auto de *certiorari* es el recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. *Rivera Gómez y otros v. Arcos Dorados Puerto Rico, Inc. y otros*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *800 Ponce de León Corp. v. AIG*, 205 DPR 163, 174 (2020); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009). En particular, es un recurso mediante el cual se solicita la corrección de un error cometido por un foro inferior. *Torres González v. Zaragoza Meléndez*, supra. Así pues, la determinación de expedir o denegar un recurso de *certiorari* está enmarcada en la discreción judicial. *800 Ponce de León Corp. v. AIG*, supra. No obstante, la discreción judicial para expedir o no el auto de *certiorari* solicitado no ocurre en un vacío ni en ausencia de unos parámetros. *Torres González v. Zaragoza Meléndez*, supra.

A esos efectos, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap.V, R.52.1, limita la autoridad del Tribunal de Apelaciones para revisar las órdenes y resoluciones interlocutorias que dictan los tribunales de instancia por medio del recurso discrecional del *certiorari*. *Scotiabank of PR v. ZAF Corp.*, 202 DPR 478,

486-487 (2019). En lo pertinente, la precitada disposición reglamentaria, *supra*, dispone que:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia, al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Si ninguno de esos elementos está presente en la petición ante la consideración del Tribunal, procede abstenerse de expedir el auto, de manera que se continúen los procedimientos del caso, sin mayor dilación, ante el Tribunal de Primera Instancia. *García v. Asociación*, 165 DPR 311, 322 (2005); *Meléndez Vega v. Caribbean Intl. News,* 151 DPR 649, 664 (2000); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

Con el fin de que podamos ejercer de una manera sensata nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el recurso, la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 42, señala los criterios que debemos considerar al atender una solicitud de expedición de un auto de *certiorari*. *Torres González v. Zaragoza Meléndez*, supra. En lo pertinente, la

precitada disposición reglamentaria establece lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari*, o de una orden de mostrar causa:
>
> A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Nótese que, distinto al recurso de apelación, el auto de *certiorari*, por ser un recurso discrecional, debemos utilizarlo con cautela y por razones de peso. *Pueblo v. Díaz de León*, supra, pág. 918. Ahora bien, el Tribunal Supremo de Puerto Rico reiteradamente ha indicado que la discreción significa tener poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009); *García v. Padró*, 165 DPR 324, 334 (2005). El adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente atado al concepto de la razonabilidad." *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990). Así pues, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que

las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. *Pueblo v. Rivera Santiago,* supra, pág. 581; *SLG Flores, Jiménez v. Colberg*, 173 DPR 843 (2008).

–**B**–

El Título VI del Libro de Sucesión por Causa de Muerte del Código Civil del 2020, 31 LPRA sec. 5311, *et seq.,* intitulado Los Ejecutores de la Herencia, regula la figura del ejecutor. El Artículo 1728 define el ejecutor como "la persona natural o jurídica encargada de realizar actos en beneficio de la herencia o de hacer la partición". 31 LPRA sec. 11491. Mientras que, el Artículo 1731 del Código Civil, 31 LPRA sec. 11494, establece los tipos de clasificaciones e los ejecutores, entiéndase el ejecutor universal o particular, los cuales pueden ser designados para que actúen individual, conjunta o sucesivamente.

El cargo de ejecutor es uno voluntario y su aceptación puede ser expresa, tácita o legal. 31 LPRA sec. 11541-11542. Un ejecutor acepta su puesto expresamente mediante documento público o privado, mientras que una aceptación tácita ocurre cuando realiza actos que suponen necesariamente la voluntad de aceptar. *Íd*. Finalmente, la aceptación es legal cuando transcurren 15 días desde que se requiere al designado que acepte o repudie, y este no actúa. *Íd*.

El Artículo 1752 del Código Civil, 31 LPRA sec. 11543, explica que la duración del cargo, cuando no se ha fijado plazo es de un (1) año desde la aceptación, o desde que culmine el litigio. No obstante, este término puede ser prorrogado por los herederos. Asimismo, el Artículo 1754 aclara que "[l]os herederos pueden, por

unanimidad, prorrogar el plazo del ejecutor por el tiempo que estimen necesario, pero si el acuerdo es solo por mayoría, la prórroga no puede exceder de un (1) año. 31 LPRA sec. 11545. El Código Civil también provee para que el Tribunal, dentro de su discreción, prorrogue el término. A su vez, el Artículo 1755 expone que "[s]i transcurrido el plazo señalado no se ha cumplido aún la voluntad del testador, el tribunal puede conceder una prórroga por el tiempo que sea necesario, conforme a las circunstancias del caso." 31 LPRA sec. 11546.

En cuanto a las obligaciones del ejecutor, el Artículo 1764 del Código Civil, 31 LPRA sec. 11573, indica que "el ejecutor tiene la obligación de realizar el inventario de los bienes, de rendir las cuentas y de cumplir aquellas otras obligaciones impuestas por el testador o por el tribunal." Para realizar esta labor "debe comenzar a formar el inventario de los bienes pertenecientes a la sucesión dentro de los treinta (30) días de la aceptación de su cargo y debe concluirlo dentro de los próximos sesenta (60) días a partir de haber comenzado el inventario." 31 LPRA sec. 11572. Sin embargo, el Artículo 1766 permite que este término sea prorrogado. 31 LPRA sec. 11573. "Los herederos pueden prorrogar unánimemente el plazo de sesenta (60) días para formar el inventario. En defecto de acuerdo unánime, el tribunal puede prorrogar este plazo, si existe justa causa. En este último caso, la prórroga no debe exceder de seis (6) meses". *Íd*.

El Artículo 1767 del Código Civil de Puerto Rico, 31 LPRA sec. 11574, regula la rendición de cuentas, este exige que "[e]l ejecutor debe rendir cuentas trimestrales por escrito y de forma detallada a los

herederos. También debe rendir una cuenta final una vez hayan transcurrido tres (3) meses de la conclusión del encargo." Los comentarios de dicho artículo añaden que es importante que el ejecutor rinda las cuentas detalladas y justificadas con evidencia, para que pueda corroborarse su certeza, para que quien no esté de acuerdo con las cuentas pueda incoar la acción judicial correspondiente.

**III.**

En el caso de autos, la señora Kolodziej Zayas le imputó al foro primario tres (3) señalamientos de error, los cuales por estar relacionados se discutirán en conjunto. En esencia, alega que incidió el foro primario al autorizar el desembolso para el pago de honorarios al ejecutor universal del caudal hereditario, y omitir la debida protección del heredero incapaz, al no nombrar un defensor judicial ni adoptar las medidas cautelares.

Por su parte, el señor Quiñones alega que el recurso debe ser rechazado de plano por no cumplir con las disposiciones de la Regla 52.1 de Procedimiento Civil. De otra parte, sostiene que no era necesario el nombramiento de un Defensor Judicial para el incapaz, ya que a dicho incapaz el foro primario nombró a su madre como su Tutora Legal, y están debidamente representados por un Abogado.

Mientras que, el señor Kolodziej Mejías sostiene que en el caso de epígrafe no se dan las condiciones de conflicto de intereses o de insuficiencia de la tutela ordinaria y no se justifica el nombramiento de un defensor judicial. Por ello, resaltó que los errores planteados no se cometieron, y procedería se deniegue el recurso.

Luego de examinar el expediente ante nuestra consideración, no identificamos razón por la cual debamos intervenir con la determinación del foro primario. Concluimos que no existe ninguna de las circunstancias o excepciones contempladas en la Regla 52.1 de Procedimiento Civil, *supra*, que nos permita intervenir con la *Orden* recurrida. A su vez, tampoco identificamos ninguno de los criterios de la citada Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, que nos mueva a variar el dictamen recurrido. Recordemos que nuestro ordenamiento jurídico nos brinda la discreción de intervenir en aquellos dictámenes interlocutorios en los que el foro de primera instancia haya sido arbitrario, cometido un craso abuso de discreción o cuando, de la actuación del foro, surja un error en la interpretación o la aplicación de cualquier norma procesal o de derecho sustantivo.

En consecuencia, denegamos la expedición del recurso de *certiorari*.

## IV.

Por los fundamentos antes expuestos, **DENEGAMOS** expedir el auto de *certiorari* solicitado.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones